IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>One black Samsung Smartphone, seized during a traffic stop of Herbert Lamont BALLARD on September 17, 2021, currently in the custody of the Pennsylvania State Police (PSP) at the Troop B: Belle Vernon Barracks | **Magistrate No: 23-700** |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT FOR CELLULAR PHONE

## INTRODUCTION

I, Richard R. Kadlecik, Task Force Officer of the Drug Enforcement Administration, United States Department of Justice, being duly sworn, state as follows:

1. I make this affidavit in support of an application for a search warrant authorizing the examination of property; one cellular telephone device (Target Device) that was seized on September 17, 2021. The device is currently in the possession of the Pennsylvania State Police (PSP) at the Troop B: Belle Vernon Barracks.

2. As set forth below, I have probable cause to believe the device contains evidence of crimes which include 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute a Controlled Substance, 21 U.S.C. § 844, Drug Possession, and 21 U.S.C. § 846, Attempt and Conspiracy.

1

3. I, Richard Kadlecik, am a Task Force Officer with the Drug Enforcement Administration ("DEA"), United States Department of Justice, and as such I am empowered under Title 21, United States Code, § 878, to enforce Title 21 and other criminal laws of the United States, to make arrests and obtain and execute search, seizure and arrest warrants. I am currently assigned to the DEA's Pittsburgh District Office ("PDO"), within the Philadelphia Field Division. In addition to my assignment as a Task Force Officer with DEA, I am a Police Officer with the rank of Detective for the Robinson Township Police Department ("RTPD"). I have been employed as a Police Officer by the RTPD since 2007 and have prior experience from the numerous drug investigations that I worked on as a police officer since 1998. In connection with my official duties, I investigate criminal and civil violations of the Federal Controlled Substances Act. During my time with DEA, I have participated in numerous drug trafficking investigations, including investigations that have resulted in felony prosecutions for violations of Title 21 of the United States Code. As part of my duties, I have conducted various types of electronic surveillance, executed search, seizure and arrest warrants, and debriefed defendants, witnesses, informants and others who have knowledge of the distribution and transportation of controlled substances, controlled substance analogues, precursor chemicals, and of the laundering and concealment of proceeds from such drug trafficking.

4. I am an "Investigative or Law Enforcement Officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I have

been involved in narcotics related arrests and the execution of search warrants which resulted in the seizure of narcotics. I have received training and experience in arrest procedures, search and seizure, narcotics, drug interdiction, undercover techniques and operations, managing informants, interviewing and interrogation techniques, financial investigations, search warrant applications, and various other crimes.

5. Based on my training and experience, I am familiar with the methods of operation employed by drug trafficking organizations operating at the local, state, national, and international levels, including those involving the distribution, storage, and transportation of narcotics and the collection of money that constitutes the proceeds of narcotics trafficking activities. I am aware that drug traffickers commonly use cellular telephones in furtherance of their drug trafficking activities and will carry those devices with them where ever they go. I am also aware that drug traffickers often speak in vague, guarded, coded language or employ text messaging when discussing their illegal business in an effort to further prevent detection.

6. Further, based on my training and experience, I am aware that it is common practice for drug traffickers who desire to insulate themselves from detection by law enforcement, to routinely utilize multiple telephones, counter surveillance, false or fictitious identities, and coded communications in order to communicate with their customers, suppliers, couriers, and other conspirators. Moreover, it is not unusual for them to initiate or subscribe phone services in fictitious names or under the name of an associate or family member, in an effort to thwart detection by law enforcement. It is now a common practice for drug traffickers to utilize all communication features of their telephones, most notably the voice call and text message features, nearly

simultaneously, to communicate with their sources, conspirators and customers. For example, it is quite common for a particular transaction to be set up and completed using both voice calls and text messages. In fact, it is now quite unusual for a drug trafficker to utilize solely one feature of a telephone, such as the voice call feature, to further his criminal activities while not also using another feature, such as the text message feature, to further his criminal activities.

7. Further, your affiant is aware that drug traffickers sometimes use their cellular telephones and tablets to take and retain photographs and videos of their drugs, firearms, and narcotics sales proceeds. Such traffickers, like law-abiding citizens, sometimes take photographs and videos using their cellular telephones of themselves with their friends, relatives, and associates and keep the photographs on their cellular telephones. Such photographs and videos, can help identify the user of the phone, and when taken or retained by drug traffickers, can be evidence, and can lead to additional evidence of illegal trafficking activity by identifying the traffickers, contraband, and people who are actively assisting and/or supporting the trafficking activity as well as the locations where they live or where they store their drugs, proceeds, or paraphernalia.

8. Your affiant is aware that evidence of drug and firearm crimes can often be found in electronic media, including cellular telephones, laptop computers, cameras, and tablet devices. Such evidence can be found throughout those items, such as in text messages, contact lists indicating the names and numbers of associates, call/text logs indicating calls/texts made to and received from associates, online search history files, word processing documents, photographs and video files. It should be noted

that, with the advance of technology, the distinction between computers and cellular telephones is quickly becoming less clear. Actions such as internet searching or emailing, in addition to calling, text messaging and photographing, can now be performed from many cell phones. The specific numbers of, and the specific numbers dialed by, particular cellular telephones can be evidence of drug trafficking, particularly in light of the fact that it is a practical necessity that drug traffickers communicate with each other, as well as with their customers and suppliers, by telephone. Such numbers can confirm identities of particular associates and the occurrence of certain events.

9. Due to narcotics traffickers' heavy reliance on cellular telephones to conduct their business, evidence of drug crimes can very often be found on cellular telephones. For example, when a lower-level narcotics dealer receives an order (either in person or by telephone) for heroin or cocaine, that dealer may place a call or send a text message to a higher-level narcotics dealer indicating that he needs more narcotics to provide to the customer. Accordingly, evidence of such a narcotics conspiracy can be found in various locations in a cellular telephone, such as in text messages, contact lists indicating the names and numbers of associates, and call logs indicating calls made to and received from associates. This evidence of a narcotics conspiracy is critical to law enforcement's ability to locate and arrest all individuals involved in a particular narcotics sale.

10. Last, as with most electronic/digital technology items, communications made from an electronic device, such as a cellular telephone, are often saved or stored on the device. Storing this information can be intentional, for example, by saving a text message or a

contact or an e-mail. Digital information can also be retained unintentionally. Traces of the path of an electronic communication or of an internet search may be automatically stored in many places on a cellular telephone. A forensic examiner often can recover evidence that shows when and in what manner a user of an electronic device, such as a computer or a cell phone, used such a device. Electronic files or remnants of such files can be recovered months or even years after they have been downloaded, stored, deleted, or viewed.

11. I am submitting this affidavit in support of an application for a warrant to search the cellular telephone that was seized from a Cadillac Escalade bearing Pennsylvania registration KYP1922 during a traffic stop that occurred on September 17, 2021. The traffic stop took place on SR 51 near Falls Church Rd. in Rostraver Township, Westmoreland County. I have obtained the information contained in this affidavit from my own participation in this investigation, as well as from my conversations and interactions with other law enforcement agents and officers.

12. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and it does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

13. The device to be searched is:

    a. One black Samsung Smartphone, ("Target Device") seized on September 17, 2021 during the traffic stop of Herbert Lamont BALLARD.

14. As described below, there is probable cause to conclude that the device, described in Attachment A, contain evidence of the commission of federal drug offenses. The applied-for warrant would authorize the forensic and/or manual examination of the devices for the purpose of identifying electronically stored data, particularly described in Attachment B.

## PROBABLE CAUSE

15. I am currently participating in the investigation of Herbert Lamont BALLARD. The statements contained in this Affidavit are based on my experience and background as a Task Force Officer with the DEA and the investigation of Herbert Lamont BALLARD. For the reasons set forth below, there is probable cause to believe that on or about September 17, 2021, BALLARD, while on Federal Supervision, was in possession of, and transporting, suspected marijuana and marijuana gummies/edibles, in violation of Title 21, United States Code, Section 841, Section 844, and Section 846. Since this affidavit is being submitted for the limited purpose of supporting probable cause to search as stated herein, I have not included each and every fact known to me concerning this investigation.

16. On September 17, 2021, at approximately 6:12 pm, Pennsylvania State Police Trooper Austin Weaver conducted a traffic stop on a Cadillac Escalade bearing PA registration

7

KYP1922, driven by Herbert Lamont BALLARD. The stop occurred on SR 51 near Falls Church Rd., in Rostraver Township, Westmoreland County.

17. Prior to the traffic stop PSP Trooper Weaver was positioned on SR 51 (south bound). Trooper Weaver ran the said registration on his mobile data terminal (MDT) and found the owner, Herbert Lamont BALLARD had a suspended driver's license.

18. Trooper Weaver approached the Cadillac Escalade and identified the driver, and sole occupant, of the vehicle as Herbert Lamont BALLARD. During the conversation with BALLARD, Trooper Weaver noted statements regarding BALLARD's travels that were suspicious/misleading.

19. Upon confirming that BALLARD's driving privileges were under suspension, Trooper Weaver re-approached the Cadillac Escalade. Trooper Weaver could smell an overwhelming odor of raw marijuana emanating from inside the vehicle as he stood at the driver's side door of the Cadillac Escalade. Trooper Weaver asked for, and received, verbal consent to search the Cadillac Escalade from BALLARD.

20. Trooper Weaver located a suspected marijuana cigar, numerous jars labeled as containing marijuana gummies, a bag of marijuana edibles, and a large plastic bag containing a large quantity (approximately 1 pound) of marijuana. Also located within the Cadillac Escalade was the Target Device, a black Samsung Smartphone. BALLARD was taken into custody by Trooper Weaver. A search, incident to arrest, of BALLARD revealed $703.00 dollars on his person. A review of BALLARD's criminal history shows arrests for drug possession and/or drug trafficking in 1985, 1990, 1993, 1995, 1997, 1998, 1999, 2005, 2011, 2012, 2014, 2015, and 2018. BALLARD has many drug convictions, including federal convictions regarding drug

trafficking activities in 2000, 2001, and 2016. Additionally, at the time of the September 17, 2021 traffic stop conducted by PSP Trooper Weaver, BALLARD was on federal supervised released for distributing cocaine.

21. Based on the facts and circumstances surrounding the traffic stop of BALLARD and my training and experience, I believe that on September 17, 2021, BALLARD was knowingly in possession of marijuana intended for distribution, in possession of a sum of US currency consistent with that of narcotics proceeds, and was engaged in potential violations of his federal supervised release. It is also my belief that BALLARD very likely used the Target Device to conduct his narcotic trafficking activities and that a search of the Target Device will yield evidence of such activities.

**CONCLUSION**

22. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Target Device described above to seek the items described in Attachment B.

Respectfully submitted,

/s/*Richard Kadlecik*

Richard Kadlecik
Task Force Officer - DEA
Pittsburgh District Office

Sworn and subscribed to me
by telephone pursuant to Federal R.
Crim. P. 4.1(b)(2)(A), this
10th day of May 2023

_____
HONORABLE CYNTHIA REED EDDY
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### LOCATION TO BE SEARCHED

The device to be searched is described as follows:

    **a.** One Samsung Smartphone (Target Device) seized on September 17, 2021 regarding Herbert Lamont BALLARD. The Target Device is currently in the custody of the Pennsylvania State Police (PSP) and stored at the Troop B: Belle Vernon Barracks.

## ATTACHMENT B

### ITEMS TO BE SEARCHED

1. All records, information, and items evidencing drug possession, trafficking, or conspiracy including evidence of who used the device (and/or when, and/or from where), or a violation Title 21, United States Code, Sections 841(a)(1), 844, and 846, including:

   a. incoming and outgoing call and text message logs
   b. contact lists
   c. photo and video galleries
   d. sent and received text messages
   e. online searches and sites viewed via the internet
   f. online or electronic communications sent and received, including email, chat, instant messages and social media accounts
   g. sent and received audio files
   h. navigation, mapping, and GPS files
   i. telephone settings, including speed dial numbers and the telephone number for the subject telephone and related identifying information such as the ESN for the telephone
   j. call forwarding information
   k. messages drafted but not sent
   l. voice messages.

2. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form. However, no real-time communications will be intercepted and searched during service.